UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE APPLICATION OF THE )
UNITED STATES OF AMERICA FOR )
AN ORDER PURSUANT TO )
18 U.S.C. § 3512 )
)
Request from the Netherlands for Assistance in a )
Criminal Matter: Bank Records )

ML NO. ____

DOJ Reference Number: CRM-182-61382

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel,

respectfully submits this ex parte application for an Order, pursuant to 18 U.S.C. § 3512,

appointing the undersigned attorney, Jean Aylward, Trial Attorney, Office of International

Affairs (or a substitute or successor subsequently designated by the Office of International

Affairs), as a commissioner to collect evidence from witnesses and to take such other action as is

necessary to execute a request for assistance in a criminal matter from the Kingdom of the

Netherlands (the Netherlands).  In support of this application, the United States asserts:

RELEVANT FACTS

1.     On November 2, 2017, the Dutch Ministry of Security and Justice submitted a

request for assistance (the Request) to the United States, pursuant to the Agreement comprising

the instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance

Between the United States of America and the European Union signed at Washington on 25 June

2003, as to the application of the Treaty Between the United States of America and the Kingdom

of the Netherlands on Mutual Assistance in Criminal Matters signed at the Hague on 12 June

1981, Neth.-U.S., Sept. 29, 2004, S. TREATY DOC. NO. 109-13 (the Treaty). As stated in the

Request, the Public Prosecution Department East Netherlands is investigating criminal offenses,

specifically, drug trafficking, participation in a criminal organization, and money laundering,

which occurred between in or about November 2013 and July 2016, in violation of the criminal

law of the Netherlands, namely, Articles 2 and 10 of the Netherlands Opium Act and Articles

140 and 420bis of the Dutch Criminal Code. A copy of the applicable law is included as

Attachment A to this application. Under the Treaty, the United States is obligated to render

assistance in response to the Request.

2.      According to authorities in the Netherlands, in November 2014, the database

server for illegal darknet marketplace "Hydra" was seized by law enforcement authorities

investigating the international online trade of narcotics. Among the accounts discovered on the

server was one entitled "fredthebaker," which was active in numerous darknet marketplaces, in

addition to Hydra. On these marketplaces, "fredthebaker" sold cocaine, speed, MDMA,

ketamine, heroin, and XTC pills.

3.      Orders placed to "fredthebaker" on the darknet marketplaces were paid with

bitcoins and buyers were given shipment tracking numbers. Those tracking numbers revealed

that a majority of the shipments originated from a post office in Uelsen, Germany. Video

footage from that post office helped investigators identify the individual who was bringing the

shipments to the post office as Johan Hoogezand (Hoogezand), a Dutch citizen.

4.      Further investigation, to include video and telephone surveillance, controlled

purchases, and physical surveillance, established that Hoogezand had frequent contact with: Kah

Hin Khoo (Khoo), a Malaysian-born Dutch citizen; Cliff Maijer (Maijer), a Dutch citizen; and

Jan Westeneng (Westeneng), also a Dutch citizen. Investigators also determined that

Hoogezand, Khoo, Maijer, and Westeneng (the suspects) were all directly involved with the

online drug trafficking activity of "fredthebaker;" therefore, all became suspects in the

"fredthebaker" investigation.

5.      Between November 2014 and July 2016, the investigation revealed that suspects

Hoogezand, Khoo, Maijer, and Westeneng were frequently present at a shed located in Almelo,

the Netherlands, and that they routinely traveled from there to the aforementioned post office in

Germany. Authorities believe that the shed was being used to package and prepare the drugs for

shipment.

6.      On June 6, 2016, authorities conducted searches of the shed and the suspects'

homes. In the shed, authorities discovered: narcotics; packing materials; notes about orders for

narcotics; scales; encrypted cell phones; bitcoin credit cards; prepaid credit cards; large amounts

of cash; and firearms. At the suspects' homes, authorities found narcotics; administrative

records of orders for narcotics; scales; encrypted cellphones; bitcoin credit cards; prepaid credit

cards; large amounts of cash, and firearms.

7.      Blockchain[1] analysis was used to further analyze the "fredthebaker" bitcoin[2]

---

[1] Blockchain is a continuously growing list of records, called blocks, which are linked and secured using cryptography. Each block typically contains a cryptographic hash of the previous block, a timestamp, and transaction data. By design, a blockchain is inherently resistant to modification of the data. It is an open, distributed ledger that can record transactions between two parties efficiently and in a verifiable and permanent way. For use as a distributed ledger, a blockchain is typically managed by a peer-to-peer network collectively adhering to a protocol for inter-node communication and validating new blocks. Once recorded, the data in any given block cannot be altered retroactively without the alteration of all subsequent blocks, which requires collusion of the network majority.

[2] Bitcoin is a digital medium of currency and a payment system, also referred to as cryptocurrency. Encryption technology enables bitcoin to be used as a form of exchange to secure transactions and control the creation of additional units of the currency. Bitcoin was introduced to the public in October 2009. The system is peer-to-peer, meaning that transactions take place between users directly, without an intermediary, although bitcoin exchanges do exist (see next fn). There is no central repository or single administrator for bitcoin; therefore, the U.S. Treasury recognizes bitcoin as a decentralized virtual currency, the first of its kind. Bitcoin is currently the largest decentralized

transactions on the darknet. The investigation revealed that the bitcoins earned by "fredthebaker" were being transferred to bitcoin addresses, at bitcoin exchanger[3] "Bitstamp," in the name of Colin Dunseath, an Irish citizen. Investigation of Hoogezand and Westeneng's bank accounts established that between November 2013 and August 2014, Dunseath had transferred large amounts of money, in euros, to Hoogeszand's (64,000 euros total) and Westeneng's (119,092 euros) accounts. In addition, from the period of September 2014 to July 2015, large amounts of money (31,218 euros total) were credited to Westeneng's bank account from a bank account in the name of Scott Albert Kennedy (Kennedy). Further investigation established that Dunseath and Kennedy, in the period from November 2013 to July 2015, facilitated the laundering of money earned by "fredthebaker" by converting bitcoins into euros and transferring those euros to the suspects' bank accounts. Accordingly, Dutch authorities consider Dunseath and Kennedy to be possible accomplices in the "fredthebaker" investigation.

8.      During the aforementioned search of Khoo's residence, on June 6, 2016, authorities discovered: 5,000 euros cash; 875 grams of narcotics (described as "probably amphetamine"); an encrypted cell phone; five blank bank cards; and seven bank cards in Kennedy's name, specifically, "Scott Kennedy;" "Scott Albert Kennedy;" or "Scott Albert K."

9.      According to Dutch authorities, further investigation of the five blank bank cards revealed that the cards were illegal ("skimmed") copies of either actual prepaid credit cards or standard customer credit cards. Upon electronically reading the cards, investigators were able to determine the corresponding bank accounts to which each of the five cards is linked: bank card

---

virtual currency, in terms of total market value.

[3] A bitcoin exchange is a digital marketplace where traders can buy and sell bitcoins using different fiat currencies or altcoins. A bitcoin currency exchange is an online platform that acts as an intermediary between buyers and sellers of the cryptocurrency.

#1 is associated with account number xxxxxxxxxxxx6199 at JPMorgan Chase Bank, N.A.; bank card #2 is associated with account number xxxxxxxxxxxx1960 at JPMorgan Chase Bank, N.A.; bank card #3 is associated with account number xxxxxxxxxxxx8168 at JPMorgan Chase Bank, N.A.; bank card #4 is associated with account number xxxxxxxxxxxx9987 at JPMorgan Chase Bank, N.A., and bank card #5 is associated with account number xxxxxxxxxxxx2753 at Wells Fargo Bank, N.A.  All five of the bank accounts are located in the United States.

      10.     The Dutch investigation is currently focused on tracing the assets that "fredthebaker" earned through illegal, online drug trafficking and the investigation has established that the bitcoins earned by "fredthebaker" for drug trafficking for the period of November 2013 to July 2014 were transferred by possible accomplices Dunseath and Kennedy to the accounts of suspects Hoogezand and Westeneng.  Because Kennedy transferred large amounts of money to Westeneng, Dutch authorities believe it is likely that the prepaid cards registered in his name, discovered in Khoo's home, were used to launder money earned by the illegal trafficking of narcotics online as a way of distributing the profits of that activity to the suspects, thereby preventing a paper trail.

      11.     To further the investigation, authorities in the Netherlands have asked U.S. authorities to provide:

    (a)    complete bank records from JPMorgan Chase Bank, N.A., pertaining to account numbers xxxxxxxxxxxx6199, xxxxxxxxxxxx1960; xxxxxxxxxxxx8168, and xxxxxxxxxxxx9987, and from Wells Fargo Bank, N.A., pertaining to account number xxxxxxxxxxxx2753, to include account opening documents; identification of authorized users; IP logs; list of bank cards associated with the account; list of other bank products connected to the account; securities and collateral provided; and the log of registered

safe visits.

(b)     from JPMorgan Chase Bank, N.A and Wells Fargo Bank, N.A., a list of bank

products in the name of Colin Dunseath, to include bank accounts, credit facilities, bank

safes, credit cards, securities accounts, and, of those, the following information: balances

and transaction data; redemption scheme and/or credit facility status; securities/collateral

provided; and the log of registered safe visits.

(c)     from JPMorgan Chase Bank, N.A and Wells Fargo Bank, N.A., a list of bank

products in the name of Scott Albert Kennedy, to include bank accounts, credit facilities,

bank safes, credit cards, securities accounts, and, of those, the following information:

balances and transaction data; redemption scheme and/or credit facility status;

securities/collateral provided; and the log of registered safe visits.

(d)     from JPMorgan Chase Bank, N.A and Wells Fargo Bank, N.A., a list of bank

products in the name of Kah Hin Khoo, to include bank accounts, credit facilities, bank

safes, credit cards, securities accounts, and, of those, the following information: balances

and transaction data; redemption scheme and/or credit facility status; securities/collateral

provided; and the log of registered safe visits.


## LEGAL BACKGROUND

### The Treaty

12.     A treaty constitutes the law of the land.  U.S. Const. art. VI, cl.2.  The provisions

of a treaty have equal footing with acts of Congress and are binding on the courts.  See Asakura

v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801);

United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001).  The provisions of a treaty

should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (368) (1989) (internal quotation marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

13.    The United States and the Netherlands entered into the Treaty to promote more effective cooperation and assistance between the parties in criminal matters. Treaty Annex, Article 1. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Id. In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. See Treaty Annex, Articles 5 and 6 ("A person from whom evidence is sought shall, if necessary, be compelled by subpoena to appear and testify or produce documents, records and articles to the same extent as in investigations or proceedings in the Requested State. Testimonial privileges under the laws of the Requesting State shall not apply in the execution of requests under this Article").[4]

18 U.S.C. § 3512

14.    When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512. This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in

---

[4] Dutch authorities have not asked U.S. authorities to keep the Request confidential. Accordingly, the United States is not seeking authorization to issue a non-disclosure order, nor is it seeking an order to seal the court file.

the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

*         *         *

[A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.

*         *         *

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

15.    Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme."  155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[5]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders which are necessary to execute a foreign request.

16.    An application is duly authorized by an appropriate official of the Department of

---

[5] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were previously executed); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

Justice when the Office of International Affairs, which serves as the "Central Authority" for the

United States, has reviewed and authorized the request, and executes the request itself or

delegates execution to another attorney for the government.[6] Upon such a duly authorized

application, Section 3512 authorizes a federal judge[7] to issue "such orders as may be necessary

to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for

electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices

under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or

statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)-

(b)(1). In addition, a federal judge may prescribe any necessary procedures to facilitate the

execution of the request, including any procedures requested by the foreign authority to facilitate

its use of the evidence. See In re Letter of Request from the Crown Prosecution Service of the

United Kingdom, 870 F.2d 686, 693 (D.C. Cir. 1989) (court has discretion in prescribing

procedures to be followed in executing foreign request under 28 U.S.C. § 1782); cf. White v.

National Football League, 41 F.3d 402, 409 (8th Cir. 1994) (court may issue process necessary

to facilitate disposition of matter before it); Fed. R. Crim. P. 57(b).

    17.    Section 3512 also authorizes any person appointed to direct the taking of

testimony or statements and/or the production of documents or other things to: (1) issue an order

requiring a person to appear and/or produce documents or other things; (2) administer any

necessary oaths; (3) take testimony or statements; and (4) take receipt of documents or other

---

[6] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B.

[7] The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1) and Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

things.  18 U.S.C. § 3512(b)(2).  In ordering a person to appear and/or produce documents or

other things, the person appointed, commonly referred to as the "commissioner," typically uses a

subpoena entitled "Commissioner Subpoena."  Any such subpoena or any other order, subject to

subsection (d), may be served or executed anywhere in the United States.  18 U.S.C. § 3512(f).

A copy of a "Commissioner Subpoena" is included as Attachment B.

REQUEST FOR ORDER

18.     The Office of International Affairs has reviewed and authorized the Request, and

is executing the Request itself.  Consequently, this application for an Order appointing the

undersigned attorney as a commissioner to collect evidence from witnesses and to take such

other action as is necessary to execute the Request has been "duly authorized" within the

meaning of Section 3512.  In addition, the Request was submitted by an appropriate "foreign

authority," i.e., the Dutch Ministry of Justice and Security, the designated Central Authority in

the Netherlands for requests made pursuant to the Treaty, and seeks assistance in the

investigation of drug trafficking, participation in a criminal organization, and money laundering

– criminal offenses in the Netherlands.  Furthermore, the requested Order is necessary to execute

the Request, and the assistance requested, i.e., the production of bank records, falls squarely

within that contemplated by both the Treaty and Section 3512.  Finally, this application was

properly filed in the District of Columbia.

19.     Both Section 3512 and the Treaty authorize the use of compulsory process in the

execution of treaty requests comparable or similar to that used in domestic criminal

investigations or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings (i.e.,

grand jury and criminal trial subpoenas) are issued without notice to any person other than the

recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in

10

execution of a treaty request pursuant to Section 3512 and the applicable treaty, likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person other than the recipients of the commissioner subpoenas.

20.     Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Jean Aylward, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner and authorizing the undersigned to take the actions necessary, including the issuance of a

commissioner subpoenas, to obtain the evidence requested in a form consistent with the intended use thereof.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199


By: _____
Jean Aylward
Trial Attorney
Maryland State Bar [no numbers]
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 800
Washington, D.C.  20530
(202) 305-9288 telephone
Jean.Aylward@usdoj.gov